UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 1:17-cr-00296-DAD-BAM-3 |
| Plaintiff, | |
| v. | ORDER DENYING DEFENDANT LUIS FERNANDEZ'S MOTION FOR MODIFICATION OF SENTENCE UNDER 18 U.S.C. § 3582(c)(1)(A) |
| LUIS FERNANDEZ, | |
| Defendant. | (Doc. Nos. 230, 231) |

Pending before the court is a motion for a reduction of sentence pursuant to 18 U.S.C. § 3582(c)(1)(A) brought on behalf of defendant Luis Fernandez. (Doc. Nos. 230, 231.) That motion is based in part on the purported risks allegedly posed to defendant by the ongoing coronavirus ("COVID-19") pandemic. For the reasons explained below, defendant's motion will be denied.

**BACKGROUND**

On April 16, 2018, defendant Fernandez entered a plea of guilty to one count of possession with intent to distribute 50 grams or more of actual methamphetamine and 500 grams or more of a mixture or sentence containing a detectable amount of methamphetamine in violation of 21 U.S.C. § 841(a)(1) and one count of distribution of 50 grams or more of actual methamphetamine and 500 grams or more of a mixture or sentence containing a detectable

1   amount of methamphetamine in violation of 21 U.S.C. § 841(a)(1).  (Doc. Nos. 11, 33, 41.)  On

2   August 14, 2019, the court sentenced defendant to a term of imprisonment of 60 months in the

3   custody of the U.S. Bureau of Prisons ("BOP") as to each count, with those terms to be served

4   concurrently, followed by a concurrent term of supervised release of 60 months on each count.

5   (Doc. Nos. 160, 162 at 2–3.)  The court also imposed the mandatory $100.00 special assessment

6   for each count.  (Doc. No. 162 at 6.)

7          Defendant is currently serving his sentence at Federal Correctional Institution Herlong

8   ("FCI Herlong") in Herlong, California.  (Doc. Nos. 231 at 3; 237 at 3.)  As of the date of this

9   order, defendant Fernandez has served approximately 45 months of his 60-month sentence.  (Doc.

10  Nos. 237 at 3; 237-1 at 3.)  Accounting for good time credit, his projected release date is March

11  13, 2022.  (Doc. No. 237-1 at 2.)

12         On February 16, 2021, pursuant to defendant's request for counsel in connection with his

13  pending motion for compassionate release, the court appointed counsel to represent defendant in

14  seeking that relief.  (Doc. No. 224.)  On April 5, 2021, appointed counsel filed a motion for

15  compassionate release under 18 U.S.C. § 3582(c)(1)(A) on behalf of defendant Fernandez.  (Doc.

16  No. 230.)  The next day, on April 6, 2021, appointed counsel filed an amended motion for

17  compassionate release.  (Doc. No. 231.)  The government filed its opposition to the pending

18  motion on May 20, 2021, and defendant filed a reply thereto on June 7, 2021.  (Doc. Nos. 237,

19  242.)

20                                    **LEGAL STANDARD**

21         A court generally "may not modify a term of imprisonment once it has been imposed."

22  18 U.S.C. § 3582(c); *see also Dillon v. United States*, 560 U.S. 817, 824 (2010) ("'[A] judgment

23  of conviction that includes [a sentence of imprisonment] constitutes a final judgment' and may

24  not be modified by a district court except in limited circumstances.").  Those limited

25  circumstances include compassionate release in extraordinary cases.  *See United States v. Holden*,

26  452 F. Supp. 3d 964, 968 (D. Or. 2020).  Prior to the enactment of the First Step Act of 2018

27  ("the FSA"), motions for compassionate release could only be filed by the BOP.  18 U.S.C.

28  § 3582(c)(1)(A) (2002).  Under the FSA, however, imprisoned defendants may now bring their

                                             2

own motions for compassionate release in the district court.  18 U.S.C. § 3582(c)(1)(A) (2018).

In this regard, the FSA specifically provides that a court may

> upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf[1] or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in [18 U.S.C. §] 3553(a) to the extent that they are applicable, if it finds that –
>
> (i)   extraordinary and compelling reasons warrant such a reduction; or
>
> (ii)  the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]

18 U.S.C. § 3582(c)(1)(A)(i) and (ii).[2]

---

[1]  If the BOP denies a defendant's request within 30 days of receipt of such a request, the defendant must appeal that denial to the BOP's "Regional Director within 20 calendar days of the date the Warden signed the response." 28 C.F.R. § 542.15(a).  If the regional director denies a defendant's administrative appeal, the defendant must appeal again to the BOP's "General Counsel within 30 calendar days of the date the Regional Director signed." *Id.*  "Appeal to the General Counsel is the final administrative appeal." *Id.*  When the final administrative appeal is resolved, a defendant has "fully exhausted all administrative rights." *See* 18 U.S.C. § 3582(c)(1)(A).

[2]  Under 18 U.S.C. § 3624(c)(2), the BOP may release an incarcerated defendant to home confinement "for the shorter of 10 percent of the term of imprisonment of that prisoner or 6 months."  The Coronavirus Aid, Relief, and Economic Security Act ("the CARES Act"), Pub. L. 116-136, expands the BOP's authority to release incarcerated defendants without judicial intervention.  The CARES Act allows the BOP to "lengthen the maximum amount of time" for which a prisoner may be placed in home confinement under § 3624(c)(2) "as the Director determines appropriate," assuming "the Attorney General finds that emergency conditions will materially affect the functioning" of the BOP.  CARES Act, Pub. L. 116-136, Div. B, Title II, § 12003(b)(2) (2020).  However, the BOP's authority in this regard is limited to "the covered emergency period." *Id.*  The BOP's authority expires "30 days after the date on which the national emergency declaration terminates." *Id.* § 12003(a)(2).  After the CARES Act was

3

The applicable policy statement with respect to compassionate release in the U.S. Sentencing Guidelines sets out criteria and circumstances describing "extraordinary and compelling reasons." U.S. Sent'g Guidelines Manual ("U.S.S.G.") § 1B1.13 (U.S. Sent'g Comm'n 2018)[3]; *see also United States v. Gonzalez*, 451 F. Supp. 3d 1194, 1197 (E.D. Wash. 2020) (noting that many courts have relied on U.S.S.G. § 1B1.13 to define "extraordinary and compelling reasons," even though that policy statement was issued before Congress passed the FSA and authorized defendants to file compassionate release motions). However, the Ninth Circuit has now held "that the current version of U.S.S.G. § 1B1.13 is not an 'applicable policy statement[ ]' for 18 U.S.C. § 3582(c)(1)(A) motions filed by a defendant." *United States v. Aruda*, 993 F.3d 797, 802 (9th Cir. 2021). "In other words, the Sentencing Commission has not yet issued a policy statement 'applicable' to § 3582(c)(1)(A) motions filed by a defendant." *Id.* The Ninth Circuit clarified that "[t]he Sentencing Commission's statements in U.S.S.G. § 1B1.13 may inform a district court's discretion for § 3582(c)(1)(A) motions filed by a defendant, but they are not binding." *Id.* (citing *United States v. Gunn*, 980 F.3d 1178, 1180 (7th Cir. 2020)).

In so holding, the Ninth Circuit joined the five other circuits who have addressed this issue and have unanimously held "that U.S.S.G. § 1B1.13 only applies to § 3582(c)(1)(A)

---

enacted, the Attorney General issued a memo instructing the BOP to "immediately review all inmates who have COVID-19 risk factors" beginning with those who are housed at facilities where "COVID-19 is materially affecting operations." Office of Att'y Gen., *Increasing Use of Home Confinement at Institutions Most Affected by COVID-19* (Apr. 3, 2020). The BOP has acted on the Attorney General's guidance, including one case in which a sentenced prisoner was released to home confinement after serving less than half his sentence from a facility that reported no positive COVID-19 cases at the time of his release. *See* Hannah Albarazi, *Paul Manafort Seeks Prison Release Over COVID-19 Fears*, Law360 (Apr. 14, 2020), https://www.law360.com/articles/1263706/paul-manafort-seeks-prison-release-over-covid-19-fears (noting that the prisoner's counsel had argued that the CARES Act "broadens the authority" of the BOP to release prisoners to home confinement); Khorri Atkinson, *Paul Manafort Released From Prison Amid COVID-19 Fears*, Law360 (May 13, 2020), https://www.law360.com/articles/1273090/paul-manafort-released-from-prison-amid-covid-19-fears.

[3] According to U.S.S.G. § 1B1.13(2), to be granted a reduction of sentence under 18 U.S.C. § 3582(c)(1)(A), the defendant must not pose "a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13(2). However, as the Ninth Circuit recently clarified, "[t]his dangerousness finding is not statutorily required under 18 U.S.C. § 3582(c)(1)(A)(i), but [it] is part of the Sentencing Commission's policy statement in U.S.S.G. § 1B1.13(2)." *United States v. Aruda*, 993 F.3d 797, 799 (9th Cir. 2021).

1   motions filed by the BOP Director, and does not apply to § 3582(c)(1)(A) motions filed by a

2   defendant." *Id.*; *see, e.g.*, *United States v. Brooker (Zullo)*, 976 F.3d 228, 237 (2d Cir. 2020)

3   ("[T]he First Step Act freed district courts to consider the full slate of extraordinary and

4   compelling reasons that an imprisoned person might bring before them in motions for

5   compassionate release.  Neither Application Note 1(D), nor anything else in the now-outdated

6   version of Guideline § 1B1.13, limits the district court's discretion."); *United States v. Jones*, 980

7   F.3d 1098, 1111 (6th Cir. 2020) ("In cases where incarcerated persons file motions for

8   compassionate release, federal judges may skip step two of the § 3582(c)(1)(A) inquiry and have

9   full discretion to define 'extraordinary and compelling' without consulting the policy statement

10  § 1B1.13."); *Gunn*, 980 F.3d at 1181 ("[T]he Guidelines Manual lacks an 'applicable' policy

11  statement covering prisoner-initiated applications for compassionate release.  District judges must

12  operate under the statutory criteria—'extraordinary and compelling reasons'—subject to

13  deferential appellate review."); *United States v. McCoy*, 981 F.3d 271, 284 (4th Cir. 2020) ( "In

14  short, we agree with the Second Circuit and the emerging consensus in the district courts:  There

15  is as of now no 'applicable' policy statement governing compassionate-release motions filed by

16  defendants under the recently amended § 3582(c)(1)(A), and as a result, district courts are

17  'empowered . . . to consider any extraordinary and compelling reason for release that a defendant

18  might raise.'") (citation omitted); *United States v. Maumau*, 993 F.3d 821, 837 (10th Cir. 2021)

19  ("We therefore agree with the district court that under the second part of § 3582(c)(1)(A)'s test,

20  its finding that extraordinary and compelling reasons warranted a reduction in Maumau's case

21  was not constrained by the Sentencing Commission's existing policy statement, U.S.S.G.

22  § 1B1.13.").

23          In the past, when moving for relief under 18 U.S.C. § 3582(c), it was recognized that the

24  defendant bore the initial burden of demonstrating that a sentence reduction was warranted.  *See*

25  *United States v. Sprague*, 135 F.3d 1301, 1306–07 (9th Cir. 1998).  Although the Ninth Circuit

26  has not specifically addressed the question of which party bears the burden in the context of a

27  motion for compassionate release brought pursuant to § 3582(c) as amended by the FSA, district

28  courts to have done so agree that the burden remains with the defendant.  *See, e.g.*, *United States*

1    *v. Greenhut*, No. 2:18-cr-00048-CAS, 2020 WL 509385, *1 (C.D. Cal. Jan. 31, 2020); *United*

2    *States v. Van Sickle*, No. 18-cr-0250-JLR, 2020 WL 2219496, *3 (W.D. Wash. May 7, 2020).

3                                      **ANALYSIS**

4            As district courts have summarized, in analyzing whether a defendant is entitled to

5    compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i), the court must determine whether a

6    defendant has satisfied three requirements:

7                First, as a threshold matter, the statute requires defendants to exhaust
                 administrative remedies.   18 U.S.C. § 3582(c)(1)(A).   Second, a
8                district court may grant compassionate release only if "extraordinary
                 and compelling reasons warrant such a reduction" and "that such
9                reduction is consistent with applicable policy statements issued by
                 the Sentencing Commission.  *Id.*  Third, the district court must also
10               consider "the factors set forth in Section 3553(a) to the extent that
                 they are applicable."  *Id.*
11

12   *United States v. Rodriguez*, 424 F. Supp. 3d 674, 680 (N.D. Cal. 2019); *see also United States v.*

13   *Ramirez-Suarez*, No. 16-cr-00124-LHK-4, 2020 WL 3869181, at *2 (N.D. Cal. July 9, 2020);

14   *United States v. Parker*, 461 F. Supp. 3d 966, 970 (C.D. Cal. 2020); *United States v. Trent*, No.

15   16-cr-00178-CRB-1, 2020 WL 1812242, at *2 (N.D. Cal. Apr. 9, 2020) (noting that as to the third

16   factor, under 18 U.S.C. § 3582(c)(1)(A) release must be "consistent with" the sentencing factors

17   set forth in § 3553(a)).

18   **A.      Administrative Exhaustion**

19           In this case, the parties agree that defendant has exhausted his administrative remedies

20   prior to filing his pending § 3582 motion.  (Doc. Nos. 231 at 7; 237 at 3.)  Specifically, defendant

21   Fernandez submitted a written request for compassionate release to the warden of FCI

22   Herlong on December 23, 2020, and the warden denied that request on February 15, 2021.  (*Id.*)[4]

23   Accordingly, the court will turn to the merits of defendant's motion.

24   /////

25   /////

26   _____

27   [4]  Neither party addresses whether the defendant was required to appeal the warden's denial.
     Because a failure to exhaust administrative remedies is normally viewed as an affirmative defense
28   which must be pled and proven, the court will accept the government's concession on the issue of
     exhaustion and will address the merits of defendant's motion.

1    **B.      Extraordinary and Compelling Reasons**

2              According to the Sentencing Commission's policy statement, "extraordinary and

3    compelling reasons" warranting compassionate release may exist based on a defendant's medical

4    conditions, age and other related factors, family circumstances, or "other reasons."  U.S.S.G.

5    § 1B1.13, cmt. n.1 (A)–(D).  As addressed above, even though the catch-all of "other reasons"

6    was included in the policy statement at a time when only the BOP could bring a compassionate

7    release motion, courts have agreed that it may be relied upon by defendants bringing their own

8    motions for reductions in their sentence under the FSA.  *See, e.g.*, *United States v. Kesoyan*, No.

9    2:15-cr-00236-JAM, 2020 WL 2039028, at *3–4 (E.D. Cal. Apr. 28, 2020) (collecting cases.)

10   Moreover, in light of the Ninth Circuit's decision in *Aruda*, while U.S.S.G. § 1B1.13 may inform

11   its determination, this court is not restricted thereby and instead has "full discretion to define

12   'extraordinary and compelling' without consulting the policy statement § 1B1.13."  *Jones*, 980

13   F.3d at 1111.

14             The medical condition of a defendant may warrant the granting of compassionate release

15   by the court where the defendant "is suffering from a terminal illness (i.e., a serious and advanced

16   illness with an end of life trajectory)," though "[a] specific prognosis of life expectancy (i.e., a

17   probability of death within a specific time period) is not required."  U.S.S.G. § 1B1.13, cmt.

18   n.1(A)(i).  Non-exhaustive examples of terminal illnesses that may warrant a compassionate

19   release "include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage

20   organ disease, and advanced dementia."  *Id*.  In addition to terminal illnesses, a defendant's

21   debilitating physical or mental condition may warrant compassionate release, including when:

22             The defendant is

23             (I)   suffering from a serious physical or medical condition,

24             (II)  suffering from a serious functional or cognitive impairment, or

25             (III) experiencing deteriorating physical or mental health because of
26             the aging process, that substantially diminishes the ability of the
             defendant to provide self-care within the environment of a
27             correctional facility and from which he or she is not expected to
             recover.

28   *Id*. at cmt. n.1(A)(ii).  Where a defendant has moderate medical issues that otherwise might not be

1 sufficient to warrant compassionate release under ordinary circumstances, many courts have

2 concluded that the risks posed by COVID-19 may tip the scale in favor of release when the

3 particular circumstances of a case are considered in their totality. *See, e.g.*, *Parker*, 461 F. Supp.

4 3d at 980 ("Since the onset of the COVID-19 pandemic, courts have determined that inmates

5 suffering from conditions such as hypertension and diabetes are now at an even greater risk of

6 deteriorating health, presenting 'extraordinary and compelling' circumstances that may justify

7 compassionate release.") (collecting cases); *United States v. Rodriguez*, 451 F. Supp. 3d 392, 405

8 (E.D. Pa. 2020) ("Without the COVID-19 pandemic—an undeniably extraordinary event—Mr.

9 Rodriguez's health problems, proximity to his release date, and rehabilitation would not present

10 extraordinary and compelling reasons to reduce his sentence. But taken together, they warrant

11 reducing his sentence.").

12      Compassionate release may also be warranted based on a defendant's age and other

13 related factors. Thus, "extraordinary and compelling reasons" exist where a "defendant (i) is at

14 least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because

15 of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of

16 imprisonment, whichever is less." U.S.S.G. § 1B1.13, cmt. n.1(B).[5]

17      Defendant Fernandez argues that extraordinary and compelling reasons warranting

18 reduction of his custodial sentence exist because: (1) he suffers from a health condition that some

19 data shows may increase his risk of suffering a severe illness from COVID-19, and (2) he cannot

20 take measures to self-care during the pandemic while incarcerated at FCI Herlong. (Doc. No. 231

21 at 3, 11.) Specifically, defendant asserts that he suffers from hydronephrosis of the right kidney,

22 which he contends can damage the kidneys and lead to kidney failure in severe cases. (*Id.* at 3.)

23 Defendant also asserts that some data "shows that kidney issues can be a comorbidity for

24 COVID-19" and that acute kidney injury, which may result from severe hydronephrosis, "has

25 been shown to result in a three-fold increase in risk of death because of COVID-19." (*Id.* at 3–4.)

26 /////

27

28   [5] Here, however, because defendant Fernandez is only 30 years old (Doc. No. 241 at 1), his age and age-related factors do not play a role in consideration of his pending motion.

8

Defendant also asserts that in light of his medical condition and his incarceration at FCI Herlong, he is unable to provide self-care during the pandemic. (*Id.* at 11.) In his motion for compassionate release, defendant notes that, at the time of filing, thirty-one percent of the 878 inmates at FCI Herlong with completed tests had tested positive for COVID-19. (*Id.* at 4.) Defendant also contends that FCI Herlong's response to the pandemic has been poor, pointing to an employee lawsuit filed against the institution in which the plaintiffs allege that the BOP "has not provided sufficient protective equipment, nor measures to practically eliminate the risk of exposure to COVID-19[.]" (*Id.* at 4–5.) Further, defendant contends that self-care is impossible at his place of incarceration because "[i]nmates do not have access to hand sanitizer, correctional officers and inmates do not wear masks, and parts of the prison are not being cleaned by the orderlies." (*Id.* at 11.) He emphasizes that his prior attempts at self-care were futile because he previously contracted COVID-19 while incarcerated at FCI Herlong. (*Id.*) Accordingly, defendant argues that his history of hydronephrosis and his incarceration during the pandemic constitute extraordinary and compelling reasons that warrant his compassionate release. (*Id.* at 10–11.)

In its opposition to the pending motion, the government argues that defendant Fernandez has failed to carry his burden of establishing his eligibility for compassionate release because the mere existence of COVID-19 in society or in the correctional institution where he is imprisoned is not an extraordinary and compelling reason justifying the granting of the requested relief, and because defendant's health condition does not "rise to the level of extraordinary and compelling reasons" required for compassionate release. (Doc. No. 237 at 6.) While the government does not dispute that defendant suffers from hydronephrosis, it emphasizes that the U.S. Centers for Disease Control and Prevention ("CDC") does not recognize hydronephrosis as a risk factor for COVID-19. (*Id.*)

In reply, defendant does not dispute the government's argument that the CDC does not list hydronephrosis as a risk factor for severe illness from COVID-19. (Doc. No. 242.) Instead, he notes that the CDC does identify "chronic kidney disease" as a risk factor, and that severe hydronephrosis can damage the kidney and even lead to kidney failure, which he reiterates "has

1   been shown to result in a three-fold increase in risk of death because of COVID-19." (*Id.* at 2–3.)

2          It is undisputed that according to the CDC, "[a]dults of any age" who have certain medical

3   conditions, including "chronic kidney disease," may be "more likely to get severely ill from

4   COVID-19." *See People with Certain Medical Conditions*, Centers for Disease Control and

5   Prevention, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-

6   medical-conditions.html (last updated Aug. 20, 2021); (Doc. No. 242 at 2–3). Here, a review of

7   defendant's medical records show that he has previously been diagnosed as suffering with

8   hydronephrosis, "which is not labeled as 'severe.'" (Doc. No. 235 at 1—sealed.) Defendant

9   appears to have separately been diagnosed with "disorder of kidney" by medical staff at FCI

10  Herlong. (Doc. No. 241 at 8—sealed.) However, defendant has not shown that his diagnosed

11  kidney condition amount to chronic kidney disease or create an increased risk for suffering severe

12  illness if he were to be re-infected with COVID-19. *See United States v. Douglas*, No. 1:04-cr-

13  00201-SEB-TAB-2, 2021 WL 679069, at *4 (S.D. Ind. Feb. 19, 2021) (finding that defendant's

14  history of kidney problems, including "kidney stones, hydronephrosis, and atrophy of the right

15  kidney" do not amount to chronic kidney disease or "create a risk of severe COVID-19 symptoms

16  similar to patients who have been diagnosed" with chronic kidney disease).

17          Furthermore, defendant Fernandez has not shown that FCI Herlong is presently unable to

18  monitor and adequately treat his medical conditions. *See United States v. Ayon-Nunez*, No. 1:16-

19  cr-00130-DAD, 2020 WL 704785, at *3 (E.D. Cal. Feb. 12, 2020) ("Chronic conditions that can

20  be managed in prison are not a sufficient basis for compassionate release.") (internal quotation

21  marks and citation omitted); *see also United States v. McCollough*, No. 15-cr-00336-001-PHX-

22  DLR, 2020 WL 2812841, at *2 (D. Ariz. May 29, 2020) (noting that relevant questions include

23  the adequacy of the care and treatment being provided to the defendant given his pre-existing

24  conditions and concluding that there was no evidence that the circumstances surrounding his

25  health or treatment were extraordinary or compelling). Here, defendant Fernandez's medical

26  records reflect that he has received regular medical treatment and attention from clinical

27  physicians at FCI Herlong for his hydronephrosis and other medical conditions. (*See* Doc. Nos.

28  235, 236, 241—sealed.) In fact, the extensive medical records submitted to the court by both

1    defendant and the government suggest that FCI Herlong is providing defendant Fernandez

2    adequate medical care because he is being monitored and provided the scans and procedures

3    necessary for treatment of his health conditions.  (*See* Doc. Nos. 235, 236, 242—sealed.)

4           While defendant argues that the COVID-19 pandemic is an unprecedented event that

5    poses a particular risk for prisoners, this alone does not justify early release given the risk

6    COVID-19 poses to all in society.  It is true, as one court has acknowledged, that "the presence of

7    COVID 19 . . . necessitates a more expansive interpretation of what self-care means" and thus the

8    inability of individuals at high risk of becoming severely ill from COVID-19 to practice

9    appropriate hygiene, wear a mask and maintain social distancing may constitute an inability to

10   provide self-care under some circumstances.  *United States v. Gorai*, No. 2:18-cr-00220-JCM,

11   2020 WL 1975372, at *3 (D. Nev. April 24, 2020) (citation omitted).  However, defendant

12   Fernandez has not persuasively argued that he is being prohibited from taking appropriate

13   precautions to avoid contracting COVID-19 or that his ability to provide self-care at FCI Herlong

14   is currently substantially diminished.  Although defendant asserts that he previously contracted

15   COVID-19 while at FCI Herlong despite attempting to take precautions such as maintaining

16   hygiene and social distancing, defendant's medical records do not reflect that he previously

17   contracted COVID-19; rather, those records reflect that he has previously tested negative for the

18   COVID-19 virus.  (Doc. Nos. 235 at 36—sealed; 236 at 51, 55, 68—sealed; 241 at 19, 22, 26—

19   sealed.)  In addition, although defendant emphasizes that "21% of inmates that were tested for

20   COVID-19 test[ed] positive" as of June 2021, (Doc. No. 242 at 3), he has not provided any

21   evidence in support of his pending motion regarding the conditions that he is currently facing at

22   FCI Herlong, or the ways in which he is unable to provide self-care at FCI Herlong as a result of

23   those conditions.

24          As of the date of this order on September 19, 2021, FCI Herlong reports one hundred and

25   thirteen prisoners and nine staff members with active cases confirmed with positive tests for

26   COVID-19.[6]  *See* Federal Bureau of Prisons, COVID-19 Coronavirus, available at

27   _____

28   [6]  FCI Herlong has a total population of 1,308 inmates.  FCI Herlong, FEDERAL BUREAU OF PRISONS, https://www.bop.gov/locations/institutions/her/ (last visited Sept. 13, 2021).

https://www.bop.gov/coronavirus/ (last visited September 20, 2021).[7]  The number of prisoners at that institution who have tested positive with active cases COVID-19 has increased significantly over the past few months, consistent with spread of the Delta variant of the virus.  *See United States v. Weems*, No. 2:15-cr-00089-RSL, 2021 WL 1968390, at *3 (W.D. Wash. May 17, 2021) (noting that FCI Herlong reported zero inmates and zero staff with active positive COVID-19 tests in May 2021); *United States v. Bird*, No. 16-cr-50064-JLV, 2021 WL 1564362, at *1 (D.S.D. Apr. 21, 2021) (noting that FCI Herlong reported zero inmates and five staff with active positive COVID-19 tests in April 2021).  Defendant has reported that as of June 2021 he had not been vaccinated, but did not indicate whether he had had the vaccine made available to him. (Doc. No. 242 at 3.)  In any event, FCI Herlong has undertaken efforts to provide the vaccine to its inmates, as shown by the BOP's vaccine data reporting that 796 of its 1,308 inmates have received both doses of a COVID-19 vaccine. *See* Federal Bureau of Prisons, COVID-19 Coronavirus, available at https://www.bop.gov/coronavirus/ (last visited September 13, 2021); *see also Weems*, 2021 WL 1968390, at *4 (finding that "the COVID-19 outlook [at FCI Herlong] is not as bleak as it was last spring now that vaccine distribution is underway").  According to the CDC, authorized vaccines in the U.S. "are highly effective at protecting vaccinated people against symptomatic and *severe* COVID-19."  *See COVID-19: Interim Public Health Recommendations for Fully Vaccinated People*, Centers for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/vaccines/fully-vaccinated-guidance.html (last updated July 27, 2021) (emphasis added).

In light of all of the above, the court concludes that defendant Fernandez has not met his burden of demonstrating extraordinary and compelling reasons for his compassionate release under § 3582 (c)(1)(A).  Therefore, his motion for compassionate release will be denied.

/////

/////

---

[7]  While the undersigned does not necessarily accept these reported numbers at face value in light of CDC guidelines with respect to both testing and the manner of counting "active cases," there is also no evidence before the court challenging those reported numbers in this case.

1   **C.     Consistency With the § 3553(a) Factors**

2           Finally, even if defendant Fernandez's motion was supported by a showing of

3   extraordinary and compelling reasons for his compassionate release, the undersigned is not

4   persuaded that the requested reduction in his sentence would be consistent with consideration of

5   the sentencing factors set forth at 18 U.S.C. § 3553(a).[8]  *See Parker*, 461 F. Supp. 3d at 979.

6           Defendant contends that a reduction of his sentence is consistent with consideration of the

7   § 3553 sentencing factors primarily because "the sentencing purpose of just punishment does not

8   warrant a sentence that includes exposure to a life-threatening illness."  (Doc. No. 231 at 14.)

9   Defendant Fernandez asserts that the time he has "served in custody is sufficient to satisfy the

10  purposes of sentencing and the remainder could be served on a combination of house arrest and/or

11  electronic monitoring."  (*Id.*)  Defendant also proposes a release plan in which he would return to

12  his mother's home and that his "relationships with his mother, wife, and child make him less

13  likely to re-enter the prison system."  (*Id.* at 14, 19.)

14          The government counters that the § 3553(a) sentencing factors do not support a shortened

15  sentence due to the seriousness of defendant's offenses and because defendant has served

16  approximately 45 months of his 60-month sentence.  (Doc. No. 237 at 7–8.)  The government

17  emphasizes defendant's prior history of misdemeanor convictions and the seriousness of the

18  offense for which defendant is serving his current sentence, noting that defendant "Fernandez

19  placed his minor son in great danger by taking him to a drug deal," had "supplied known gang

20  members with four pounds of methamphetamine, and was heading back to supply them with four

21

22  [8] Title 18 U.S.C. § 3553(a) provides that, in determining the sentence to be imposed, the court
shall consider:  the nature and circumstances of the offense and the history and characteristics of

23  the defendant; the need for the sentence imposed to reflect the seriousness of the offense, promote
respect for the law, provide just punishment for the offense, afford adequate deterrence, protect

24  the public from further crimes of the defendant and provide the defendant with needed
educational or vocational training, medical care, or other correctional treatment in the most

25  effective manner; the kinds of sentences available; the kinds of sentence and the sentencing range
established for the applicable category of offense committed by the applicable category of

26  defendant as set forth in the guidelines; any pertinent policy statement issued by the Sentencing

27  Commission; the need to avoid unwarranted sentence disparities among defendants with similar
records who have been found guilty of similar conduct; and the need to provide restitution to any

28  victims of the offense.

1    more pounds when he was arrested." (*Id.* at 7.)

2          As noted above, defendant Fernandez is currently serving a 60-month sentence of

3    imprisonment for possession with intent to distribute 1,742.3 grams of actual methamphetamine

4    and another four pounds of methamphetamine in violation of 21 U.S.C. § 841(a)(1) and

5    distribution of methamphetamine in violation of 21 U.S.C. § 841(a)(1).  (Doc. Nos. 33, 41 at 9.)

6    The U.S. Probation Office determined that defendant's total offense level in this case was 33,

7    based on the 1,742.3 grams of actual methamphetamine and the four pounds of methamphetamine

8    defendant admitted to distributing in his offense of conviction, and his criminal history was III,

9    resulting in an advisory sentencing guideline range calling for a term of imprisonment of between

10   168 and 210 months.  (Doc. No. 41 at 23.)  Although the Presentencing Report notes that

11   defendant suffered from an abusive childhood and that defendant serves as the provider of his

12   family, the probation officer recommended a low-end guideline sentence of 168 months in BOP

13   custody.  (*Id.* at 23–24.)  The undersigned relied upon its careful consideration of the same

14   § 3553(a) factors, as well as other considerations, in varying and departing downward to the

15   sentence of a 60-month term of imprisonment which was imposed.  (Doc. No. 62.)  Even if the

16   court were to credit defendant's current belief that he will not reoffend, "[t]he length of the

17   sentence remaining is an additional factor to consider in any compassionate release analysis,'

18   with a longer remaining sentence weighing against granting any such motion."  *United States v.*

19   *Shayota*, No. 1:15-cr-00264-LHK-1, 2020 WL 2733993 at *6 (N.D. Cal. May 26, 2020) (quoting

20   *United States v. Connell*, No. 18-cr-00281-RS, 2020 WL 2315858, at *6 (N.D. Cal. May 8,

21   2020)); *see also United States v. Lonich*, No. 1:14-cr-00139-SI-1, 2020 WL 2614874, at *3 (N.D.

22   Cal. May 21, 2020) (denying motions for compassionate release, noting, "the Court finds it

23   significant that defendants have served far less than half of their sentences").  Here, as of the date

24   of this order, defendant has served approximately 75% of the 60-month sentence imposed.  (*See*

25   Doc. No. 231-1 at 1.)  In the court's view, considering that defendant already received a below-

26   guideline range sentence, a reduction of defendant's 60-month sentence would not adequately

27   reflect the seriousness of his offense of conviction, promote respect for the law, provide just

28   punishment, or afford adequate deterrence to criminal conduct.  *See United States v. Purry*, No.

1    2:14-cr-00332-JAD-VCF, 2020 WL 2773477, at *2 (D. Nev. May 28, 2020); *Shayota*, 2020 WL

2    2733993 at *5; 18 U.S.C. § 3553(a).

3           Thus, on balance, the court finds that granting defendant's motion and reducing his

4    sentence to time served would not be consistent with the § 3553(a) sentencing factors.[9]

5                                         **CONCLUSION**

6           Because defendant Fernandez has failed to demonstrate that "extraordinary and

7    compelling" reasons exist justifying a reduction of his sentence under 18 U.S.C. § 3582 (c)(1)(A)

8    /////

9    /////

10   /////

11

12   _____

     [9]  Defendant requests that the court either reduce his sentence to time served or amend the
13   conditions of his supervised release to require him to serve what would have been the remaining
     portion of his custodial term on home confinement. (Doc. No. 231 at 14.)  First, the CARES Act
14   "'authorizes the BOP—not courts—to expand the use of home confinement' under 18 U.S.C. §
     3624(c)(2)."  *United States v. Fantz*, No. 5:14-cr-32-BR, 2020 WL 3492028, at *1 (E.D.N.C.
15   June 26, 2020) (quoting *United States v. Nash*, No. 19-cr-40022-01-DDC, 2020 WL 1974305, at
     *2 (D. Kan. Apr. 24, 2020) (collecting cases)); *see also United States v. Rice*, No. 12-cr-818-PJH,
16   2020 WL 3402274, at *4 (N.D. Cal. June 19, 2020) (denying a defendant's request for release to
     home confinement made in conjunction with his motion for compassionate release because "the
17   court has no authority to designate the place of confinement" but rather the "Bureau of Prisons
     has the statutory authority to choose the locations where prisoners serve their sentence."); *United*
18   *States v. Gray*, No. 4:12-cr-54-FL-1, 2020 WL 1943476, at *3 (E.D.N.C. Apr. 22, 2020) (holding
     that the CARES Act "does not authorize the court to order defendant's placement in home
19   confinement").  The district court may only impose home detention as a condition of supervised
     release, rather than as part of a sentence of imprisonment.  *See Connell*, 2020 WL 2315858, at *5,
20   n.6 & *7.  Accordingly, to do as defendant requests, the court would be required to reduce his
     sentence to one of time served (i.e., 45 months) and modify the conditions of supervised release
21   to require home confinement for the remainder of his term.  The court is unwilling to do so for the
     reasons set forth above.  The BOP knows its capabilities to effectively and appropriately care for
22   defendant Fernandez in a custodial setting at FCI Herlong.  If the BOP determines that the
     defendant should be released to home confinement to serve the remainder of his sentence under
23   the Attorney General's expanded authority in that regard (*see* fn. 2, above), the court trusts it will
     do so.  The court notes that according to the BOP, defendant Fernandez was eligible to serve the
24   remainder of his sentence on  home detention beginning September 13, 2021.  (Doc. No. 231-1 at
     1.)  The court will go so far to say that not only is it not opposed to defendant's designation to
25   home confinement as soon as he is deemed eligible by the BOP, but that the court would endorse
     that designation as appropriate in light of the arguments advanced in the pending motion.
26   However, the issue the court resolves in ruling on the pending motion is only whether in its view,
     under the applicable legal standards, defendant's sentence should be reduced.

27

28

1  or that such a reduction at this time would be consistent with the sentencing factors set forth in 18

2  U.S.C. § 3553(a), his motion for compassionate release (Doc. Nos. 230, 231) is denied.

3  IT IS SO ORDERED.

4      Dated:   **September 20, 2021**

5                                         UNITED STATES DISTRICT JUDGE

16